**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

**McMANIMON, SCOTLAND & BAUMANN, LLC**
Sari B. Placona
75 Livingston Avenue
Roseland, NJ 07068
Telephone: (973) 622-1800
Facsimile: (973) 622-7333
Email: SPlacona@MSBNJ.COM
*Co-Counsel to the Liquidation Trustee*

**TRIF & MODUGNO, LLC**
Louis A. Modugno
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, NJ 07960
Telephone: (973) 547-3611
Facsimile: (973) 554-1220
Email: LModugno@tm-firm.com
*Co- Counsel to the Liquidation Trustee*

| | |
|---|---|
| In re:<br><br>DIRECTBUY HOME IMPROVEMENT, INC.,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 23-19159 (SLM) |
| Alexandre Zyngier, Liquidation Trustee to the DirectBuy Home Improvement, Inc. Liquidation Trust,<br><br>Plaintiff,<br>v.<br><br>Crocker Downtown Development Assoc. dba Mizner Park,<br>Defendant. | Adv. No. Refer to Summons |

[1] The last four digits of federal tax identification number for Debtor (defined below) in this chapter 11 are 4292. On April 30, 2024 (the "Effective Date"), the Second Amended Plan of Liquidation of DirectBuy Home Improvement, Inc. Pursuant to Chapter 11 of the Bankruptcy Code went effective, and a Liquidation Trust was formed to manage the liquidation of the Debtor's estate and distributions in accordance with that plan.

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Alexandre Zyngier, Liquidation Trustee for the Liquidation Trust (the "Plaintiff") for DirectBuy Home Improvement, Inc. (the "Liquidation Trust"), liquidating debtor in the above-captioned bankruptcy case, by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Crocker Downtown Development Assoc. dba Mizner Park (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges as follows:

**NATURE OF THE CASE**

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property of DirectBuy Home Improvement, Inc. (the "Debtor") made during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of the Debtor pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code") and, subject to proof, (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtor or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the Debtor to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

**JURISDICTION AND VENUE**

3. The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). The

underlying chapter 11 bankruptcy case is administered under the caption *In re: DirectBuy Home Improvement, Inc.,* Case No. 23-19159 (SLM).

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2). Plaintiff consents to entry of final orders and judgment by the Court.

5. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

7. On October 16, 2023 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

8. Following the Petition Date, the Debtor remained in possession of its assets and continued to operate and manage its businesses as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code to implement the wind down of the Debtor's operations and the liquidation of the Debtor's assets.

9. On April 10, 2024, the Debtor filed the *Second Amended Plan of Liquidation of DirectBuy Home Improvement, Inc. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 516] (as further modified, supplemented, and amended, the "Plan").

10. On April 19, 2024, the Court entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Plan of Liquidation of DirectBuy Home Improvement, Inc. Pursuant to Chapter 11 of*

*the Bankruptcy Code* [Docket No. 533](the "Confirmation Order").[1]

11. Pursuant to the Confirmation Order, as is more fully set forth in the Liquidation Trust Agreement,[2] which is incorporated herein by reference, on the Effective Date, the Debtor was deemed to transfer all of their rights, title, and interest in and to the Liquidation Trust Assets to the Liquidation Trust free and clear of all liens, claims, encumbrances, and other interests, in accordance with section 1141 of the Bankruptcy Code. The Assets of the Estate, including the Retained Causes of Action and any proceeding thereof, vested in the Liquidation Trust on the Effective Date. The Plan defines Retained Causes of Action as, *inter alia,* Causes of Action, including Avoidance Actions, which are Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, subject, however, to any releases provided in this Plan, the Confirmation Order, the Sale Order, or any other Final Order of the Court.

12. The Confirmation Order provides that the Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement. As is more fully set forth in the Liquidation Trust Agreement, the Liquidation Trustee shall be the exclusive administrator of the Liquidation Trust Assets as well as the representative

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Confirmation Order.

[2] Exhibit A to the Plan Supplement [Docket No. 501].

of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, for purposes of carrying out the Liquidation Trustee's duties under the Liquidation Trust Agreement.

13. On April 1, 2024, the Debtor filed the *Notice of Filing of Plan Supplement* (the "Plan Supplement").[3] The exhibits to the Plan Supplement include the Liquidation Trust Agreement and identify Alexandre Zygnier as the Liquidation Trustee for the Liquidation Trust.

14. On April 30, 2024, the Effective Date of the Plan occurred,[4] and the Plan was consummated.

15. As explained below, pursuant the Plan, General Unsecured Claims, among others, comprise an impaired class of creditors that are at not expected to be paid in full.

**THE PARTIES**

16. Plaintiff, Alexandre Zygnier is the Liquidation Trustee for the Liquidation Trust, who was appointed as of the Effective Date pursuant to the Confirmation Order.

17. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods or services to or for the Debtor. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 401 NE Mizner Blvd, Ste #201, Boca Raton, FL 33432. Plaintiff is informed and believes that Defendant is a property owner and landlord residing in and subject to the laws of the State of Florida.

**FACTUAL BACKGROUND**

18. As more fully discussed in the *Declaration of Robert Fetterman, Chief Financial Officer & Interim Chief Executive Officer of the Debtor, in Support of the Debtor's Chapter 11*

---

[3] Docket No. 501.

[4] Docket No. 559.

*Petition and First Day Motions* (the "First Day Declaration"),[5] the Debtor who did business as "Z Gallerie", was a specialty retailer focused on unique style, customizable fashion, and art-inspired home décor and home furnishings. Z Gallerie was headquartered in Gardena, California where it also operated a distribution center. Z Gallerie operated in 9 states, and its products were sold in 21 retail stores located in lifestyle centers, shopping malls, and street level shops. In addition to its physical footprint, Z Gallerie maintained a significant online presence where customers could seek the latest home décor trends, explore customizable options for a vast array of different furniture and décor styles.

19. On March 11, 2019, Z Gallerie, LLC, et al. (the "Prior Z Gallerie Debtors"), commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware, Case No. 19-10488-LSS (Bankr. D. Del. 2019) (the "Prior Chapter 11 Cases") to implement a restructuring pursuant to a plan to sell their assets in bankruptcy. In June 2019, the Debtor in this case, entered into an asset purchase agreement to acquire certain assets of the Prior Z Gallerie Debtors in the Prior Chapter 11 Cases, including the Z Gallerie brand, and took assignment of a number of leases for the Prior Z Gallerie Debtors' retail stores.

20. Prior to the Petition Date, the Debtor maintained business relationships with various business entities, through which the Debtor regularly purchased, sold, received, and/or delivered goods and services. The Debtor also regularly paid for goods and services used to facilitate its business.

21. The Debtor's financial difficulties that led to the decision to file its Chapter 11 Case are attributable to a combination of factors, including substantial operating expenses, the impact of the COVID-19 pandemic, tightened vendor terms and negative customer perception following

[5] Docket No. 14.

the Prior Chapter 11 Cases, all of which placed significant stress on the Debtor's' liquidity position in the years leading up to the Petition Date. A summary of the Debtor's prepetition operations, debt structure, and factors that led to the Chapter 11 Case are set forth in the First Day Declaration and the *Amended Disclosure Statement for the Plan of Liquidation of DirectBuy Home Improvement, Inc. Pursuant to Chapter 11 of the Bankruptcy* Code [Docket No. 459] (the "Disclosure Statement") and are incorporated herein by reference.

22. As detailed in the Disclosure Statement, the Debtor completed a number of sale transactions during the Chapter 11 Case, but it did not realize sufficient proceeds from the liquidation of their assets during the Chapter 11 Case to pay in full amounts owed to the Debtor's secured lender. Specifically, the Debtor was not able to pay the Prepetition Secured Claims in full under the Plan. As a result, there are insufficient funds to pay general unsecured creditors.

23. During the ninety (90) days before the Petition Date, that is between July 18, 2023, and October 16, 2023 (the "Preference Period"), the Debtor continued to operate its businesses and transferred property of the Debtor, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise to various entities.

24. During the course of their relationship, the Debtor and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to the Debtor. The Debtor's payments to the Defendant during the Preference Period are set forth on the Statement of Account, which is attached as Exhibit A hereto and incorporated by reference.

25. The Debtor made transfer(s) of an interest of the Debtor's property to or for the benefit of the Defendant during the Preference Period through payments aggregating an amount

not less than the total set forth on Exhibit A (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A. Such details include "Payment Number," "Payment Amount," "Payment Date," "Debtor Transferor(s)," "Invoice Number," "Invoice Date," and "Invoice Amount."

26. Plaintiff is seeking to avoid all of the transfers of an interest of the Debtor's property made by the Debtor to Defendant within the Preference Period.

27. On or about October 16, 2024, Plaintiff, through counsel, sent a demand letter (the "Demand Letter") to Defendant, seeking a return of the Transfer(s). On May 7, 2025, Plaintiff, through counsel, sent a second demand letter. The Demand Letter indicated if the Defendant believed it had any valid defenses under section 547 of the Bankruptcy Code to the Liquidating Trustee's demand for payment of the Preferential Transfers, to provide a detailed explanation of the defenses.

28. Plaintiff also performed a due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant, including defenses arising under section 547(c), for which Defendant bears the burden of proof under section 547(g) by a preponderance of evidence.

29. Based upon Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid and recover some or all of the Transfers even after taking into account Defendant's potential affirmative defenses.

30. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves his right

to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

**CLAIMS FOR RELIEF**

**COUNT I**
**(Avoidance of Preference Period Transfers – 11 U.S.C. § 547)**

31. Plaintiff incorporates all preceding allegations as if fully alleged herein.

32. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor made Transfers to or for the benefit of Defendant in an aggregate amount not less than the total listed on Exhibit A hereto, which is $182,088.24.

33. Each Transfer was made from one or more of the Debtor's accounts and constituted a transfer of an interest of the Debtor in property.

34. Defendant was a creditor of the Debtor at the time of each Transfer because it had previously supplied the Debtor with goods and/or services for which the Debtor were obligated to pay following delivery.

35. Each Transfer was to or for the benefit of a creditor within the meaning of section § 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Defendant.

36. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms

are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtor as set forth on Exhibit A hereto.

37. Each Transfer was made while the Debtor were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

38. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

39. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Chapter 11 Case was under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received, the Debtor's liabilities after removing inter-debtor obligations exceed their assets to the point that unsecured creditors will not receive a distribution from the Debtor's bankruptcy estate.

40. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

**COUNT II**
**(Avoidance of Fraudulent Transfers – 11 U.S.C. § 548(a)(1)(B))**

41. Plaintiff incorporates all preceding allegations as if fully alleged herein, to the extent they are not inconsistent with the allegations contained in this Second Claim for Relief.

42. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was a transfer made by the Debtor without a corresponding transfer into the payment account by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor making

such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Fraudulent Transfers"); and

A. The Debtor was insolvent as of the date of the Fraudulent Transfer(s), or became insolvent as a result of the Fraudulent Transfer(s); or

B. The Debtor was engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital; or

C. The Debtor intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

43. Based upon the foregoing, the Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

**COUNT III**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

44. Plaintiff incorporates all preceding allegations as if fully alleged herein, to the extent they are not inconsistent with the allegations contained in this Count.

45. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and any Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

46. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

47. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s) or the equivalent value of any property recovered on

account of the Avoidable Transfer, plus interest thereon to the date of payment and the costs of this action.

**COUNT IV**
**(Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))**

48. Plaintiff incorporates all preceding allegations as if fully alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

49. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

50. Defendant has not paid to the Plaintiff the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

51. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtor's chapter 11 estate or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

52. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtor's chapter 11 estate or Plaintiff previously allowed by the Debtor or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and

550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtor until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: October 9, 2025

**McMANIMON, SCOTLAND & BAUMANN, LLC**

*<u>/s/ Sari B. Placona</u>*
Sari B. Placona

*Co-Counsel to the Liquidation Trustee*

**TRIF & MODUGNO, LLC**

*<u>/s/ Louis A. Modugno</u>*
Louis A. Modugno

*Co-Counsel to the Liquidation Trustee*

MS&B McMANIMON • SCOTLAND • BAUMANN 75 Livingston Avenue, Roseland, NJ 07068 (973) 622-1800

Defendant: **Crocker Downtown Development Assoc. dba Mizner Park**

Bankruptcy Case **DirectBuy Home Improvement, Inc.**

Preference Period: **7/18/2023 to 10/16/2023**

Transfers During Preference Period

| Debtor Transferor(s) | Debtor(s) Incurring Antecedent Debt | Payment Number | Payment Amount | Payment Date |
|---|---|---|---|---|
| DirectBuy Home Improvement, Inc. | DirectBuy Home Improvement, Inc. | 105391 | $60,696.08 | 7/18/2023 |
| DirectBuy Home Improvement, Inc. | DirectBuy Home Improvement, Inc. | 105425 | $60,696.08 | 8/1/2023 |
| DirectBuy Home Improvement, Inc. | DirectBuy Home Improvement, Inc. | 105462 | $60,696.08 | 8/30/2023 |

**Totals: 3 transfer(s), $182,088.24**